IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-02464-WDM-KLM

MONA VIE, INC., and
MONA VIE, LLC,

   Plaintiffs,

v.

AMWAY CORP.,

   Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiffs' **Petition to Quash Non-Party Subpoenas** [Docket No. 1; Filed November 12, 2008] (the "Petition") and **Amway's Cross Motion to Compel Discovery From Starrs Mihm & Pulkrabek** [Docket No. 7; Filed December 2, 2008] (the "Motion to Compel"). The Court has reviewed the Petition, Defendant's Response [Docket No. 5; Filed December 2, 2008], Plaintiffs' Reply [Docket No. 9; Filed December 23, 2008], the Motion to Compel, Starrs Mihm & Pulkrabek's Response to the Motion to Compel [Docket No. 11; Filed December 29, 2008], the entire case file and applicable case law and is sufficiently advised in the premises.

**I.    Background**

Plaintiffs request that the Court quash two non-party subpoenas issued by Defendant in connection with an action currently pending in the United States District Court for the District of Utah, entitled MonaVie, LLC v. Amway, et al., Case No. 2:08-cv-204-BSJ

1

(the "Utah litigation"). *Petition* [#1] at 1. The subpoenas were issued to non-parties Charles Corkin II ("Corkin") and the law firm of Starrs, Mihm & Pulkrabek LLP ("SM&P"), and seek allegedly confidential information produced by Plaintiffs' predecessor, Monarch Health Sciences, Inc. ("Monarch"), in a separate action in the District of Utah, entitled Monarch Health Sciences, Inc. v. Corkin, et al., Case No. 2:06-cv-440-DAK (the "Corkin Litigation"). In the Corkin litigation, Monarch asserted various breach-of-contract, unjust enrichment and fraud claims against Corkin, a former distributor of Monarch products. *Response* [#5] at Ex. 5. Corkin then asserted various breach-of-contract and fraud-related counterclaims against Monarch pursuant to an independent contractor agreement and stock warrant agreement that Corkin claimed was breached by Monarch. *See Petition* [#1] at Ex. C. During the course of this litigation, Corkin propounded discovery requests that resulted in Monarch's "production of thousands of confidential documents and electronic information germane to the parties' respective breach-of-contract and fraud claims." *Petition* [#1] at 3. As such, the District Court of Utah entered a Stipulated Protective Order (the "Protective Order") that governed the disclosure of Monarch's confidential information, and provided that confidential information produced by Monarch "not be made public by any party or person" and "not be used for any financial, commercial, marketing, business, or other competitive purpose." *Petition* [#1] at Ex. E, ¶ 6. The Protective Order further provided that:

> Upon final termination of [the Corkin litigation], including all appeals, the party receiving confidential information may retain with its counsel of record in this case any of such information to the extent it includes or reflects the receiving attorneys' work product or constitutes one complete set of all documents filed with the Court in this action. With respect to any such retained information, this Protective Order shall survive final termination of this action and continue to be binding upon all persons to whom the information is disclosed

2

> hereunder. Within thirty (30) days of final termination of this action, including all appeals, all other copies and samples of confidential information and any other summaries, abstracts, excerpts, indices, and descriptions of such information shall be returned to the producing party's counsel or destroyed.

*Petition* [#1] at Ex. E, ¶ 7. The Corkin litigation was dismissed on or about March 11, 2008, pursuant to a stipulation and settlement entered into by the parties. *Id.* at 3.

SM&P apparently represented Corkin during the Corkin litigation. Defendant states that prior to filing the Motion to Quash, SM&P agreed to produce five boxes of documents responsive to the subpoenas that are not covered by the Protective Order entered in the Corkin litigation. *Response* [#5] at 9; Ex. 10 at 2. In addition to the five non-protected boxes of documents, SM&P has identified five categories of documents and eleven categories of documents kept on CDs that were filed under seal in the Corkin litigation pursuant to the Protective Order. *Id.* Defendant now states that it only moves to compel the following category of documents and five categories of CDs that are covered by the Protective Order:

(1) MONO 0001-4020

(2) "CDs containing Privileged Email Xennsoft Server" (8 CDs)

(3) "Privileged Email Dallin, Randy and Charles" (1 CD)

(4) "MonaVie Privileged Email" (1 CD)

(5) "MonaVie Search Hits Charlie/Dallin/Randy" (1 CD)

(6) "Other Email Charlie/Randy/Dallin" (2 CDs, 3 and 4 of 4 total)

*Id.* SM&P indicates that it has compiled all documents responsive to the subpoena, and that it is currently withholding two boxes of documents on the grounds that the documents were protected by the Protective Order entered in the Utah litigation. *Response to Motion*

*to Compel* [#11] at 2. SM&P is apparently willing to produce the documents in response to the subpoena, but is concerned that such production would violation the Protective Order entered in the Utah litigation. *Id.* at 3.

## II.     Analysis

Plaintiffs argue that the subpoenas are "procedurally deficient, overly broad, not reasonably calculated to lead to the discovery of admissible evidence in the [Utah litigation], and symptomatic of the greater 'fishing expedition' that has been [Amway's] approach to discovery." *Petition* [#1] at 1-2. Plaintiffs further argue that the documents are protected "by orders of confidentiality and privilege." *Reply* [#9] at 2.

Fed. R. Civ. P. 45 governs discovery from non-parties by subpoena. Rule 45 requires that the recipient of a subpoena "timely" file a motion to quash or modify the subpoena if it (1) fails to allow a reasonable time to comply, (2) requires disclosure of privileged or other protected matter, or (3) subjects a person to undue burden. *See* Fed. R. Civ. P. 45(c)(3)(A). Pursuant to Rule 45(c)(3), motions to quash, modify, or condition the subpoena must be brought in the district court in the district from which the subpoena was issued. That is, only the issuing court has the requisite jurisdiction to enforce the subpoena, and therefore it is the logical forum for altering its terms or finding it unenforceable. *See* 9A Wright & Miller, Federal Practice and Procedure § 2463 (2d ed. 1995). However, the issuing court also has the discretion to transfer motions involving the subpoena to the district in which the action is pending. *See Goodyear Tire & Rubber Company v. Kirk's Tire & Auto Serv. Center*, 211 F.R.D. 658, 660 (D. Kan. 2003) (citing *Petersen v. Douglas County Bank & Trust Co.*, 940 F.2d 1389 (10th Cir. 1991)).

As a preliminary matter, neither party disputes that Plaintiffs have standing to quash

4

the third-party subpoenas. *See Reply* [#9] at 2. As a general rule, a party has no standing to quash a subpoena served on a third party, except as to claims of privilege or upon a showing that a privacy interest is implicated. *See Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997); *see also Broadcort Capital Corp. v. Flagler Securities, Inc.*, 149 F.R.D. 626 (D. Colo. 1993). Here, Plaintiffs argue that they have a "personal right or privilege with respect to subpoenaed information" in possession of non-parties Corkin and SM&P. *Petition*[#1] at 5. Considering that the Protective Order entered in the Corkin litigation was for the purposes of protecting Plaintiffs' privileged or confidential information, and that the parties do not dispute that many of the documents sought in the subpoenas are covered by the Protective Order, the Court finds that Plaintiffs have made the requisite showing that they have standing to move to quash Defendant's subpoenas. *See Windsor*, 175 F.R.D. at 668.

Plaintiffs initially argued that the subpoenas should be quashed because Defendant failed to give Plaintiffs prior notice of the subpoenas pursuant to Fed. R. Civ. P. 45(b)(1) and because the subpoenas allegedly required production to be made outside the issuing court, the District of Colorado. *Petition* [#1] at 6-7. Defendant admits that Plaintiffs were served with the SM&P subpoena two days after the subpoena was served on SM&P in technical violation of the Federal Rules, but argues that Plaintiffs have not demonstrated any prejudice or harm as a result of this two days. *Response* [#5] at 5. Plaintiffs do not renew or provide additional support for this argument in their reply, and as such, the Court has not considered it further. Second, Defendant states that the parties agreed that the documents were to be produced for copying and inspection in Denver, and Plaintiffs do not refute this. *Response* [#5] at 5. Therefore, the Court has not considered this argument

5

either.

The parties' primary argument centers around the relevance of the documents sought in the subpoenas. However, prior to examining the issue of the relevance of the documents, the Court believes that the issue of the Protective Order entered by the District of Utah in the Corkin litigation must first be addressed.

In *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990), the Tenth Circuit recognized that protective orders

> allow the parties to make full disclosure in discovery without fear of public access to sensitive information and without the expense and delay of protracted disputes over every item of sensitive information, thereby promoting the overriding goal of the Federal Rules of Civil Procedure, "to secure the just, speedy, and inexpensive determination of every action."

*Id.* (citations omitted). Therefore, in light of the important policy considerations underlying protective orders, the courts have found that a protective order that concerns the preservation of privileges and confidentiality endures beyond the closing of a case, and other courts should not disregard such a protective order. *See In Re Commercial Fin. Servs.,Inc.*, 247 B.R. 828, 844 (Bankr. N.D. Okla. 2000) (citing *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 781-82 (1st Cir. 1988); *State of Florida v. Jones Chemicals, Inc.*, 1993 WL 388645, at *2-3 (M.D. Fla. 1993)). Moreover, the well-established rule is that only the court that enters a protective order retains the power to modify it. *See United Nuclear Corp.*, 905 F.2d at 1427. Where, as here, the case involves materials and information which are restricted from public access, such as materials produced under a protective order, *United Nuclear* directs that the court that entered the protective order should weigh the rights of the private party litigants who produced such materials and the reasons and policies for such restrictions against the interests of collateral and other litigants in

disclosure of such material. *United Nuclear*, 905 F.2d at 1428. The correct procedure for a party seeking to challenge, modify, or enforce that order is to intervene in the case in which the order was issued. *See id.* at 1427; *Flint Hills Scientific, LLC v. Davidchack*, 2000 WL 33314112, at *2 (D. Kan. March 27, 2000) (unpublished decision).

Considering the above, the Court has serious concerns about the effect of the Protective Order entered by the District of Utah on the discovery sought by Defendant's subpoenas. The Protective Order expressly provided that its protections would "survive final termination of [the] action and continue to be binding upon all persons to whom the information is disclosed hereunder." *Petition* [#1] at Ex. E, ¶ 7. The Court does not believe that it is appropriate for Defendant to attempt to circumvent the protections provided in the Protective Order by attempting to obtain Plaintiffs' privileged and/or confidential documents from SM&P. Indeed, in *United Nuclear,* the court noted that "federal civil discovery may not be used merely to subvert limitations on discovery in another proceeding . . . [and] a collateral litigant has no right to obtain discovery materials that are privileged or otherwise immune from eventual involuntary discovery in the collateral litigation." 905 F.2d at 1428 (citing *Wilk v. Am. Medical Ass'n*, 635 F.2d 1295, 1300 (7th Cir. 1980)). Moreover, the Court finds that it is without jurisdiction to modify the Protective Order to allow for the discovery of these documents, or even to order that the documents be produced to Defendant pursuant to the Protective Order, because the Protective Order was entered by the District of Utah. *See Benton v. Board of County Com'rs*, 2007 WL 2071638, at *1 (D. Colo. July 16, 2007) ("the Court will not require the production of any documents actually designated as confidential in [a separate litigation], nor any privileged documents. The court that entered the protective order in that case has jurisdiction to address the issue of

production of confidential documents."); *Kahle v. Adams County*, 2007 WL 2381403, at *1 (D. Colo. August 16, 2007) (recognizing court's ongoing jurisdiction over the protective order it entered).

Although the parties do not directly address this issue, as an alternative form of relief, Plaintiff requests that the Court order SM&P to return all confidential and privileged documents in compliance with the Protective Order to Plaintiffs, whereupon Plaintiffs will "review the same and supplement any production under Fed. R. Civ. P. 34" in the Utah litigation. *Reply* [#9] at 8. Plaintiffs rely upon Fed. R. Civ. P. 26(c)(1), which permits the Court upon a showing of good cause to "issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Rule 26(c) further provides that the court may "prescrib[e] a discovery method other than the one selected by the party seeking discovery; . . . ." *See* Fed. R. Civ. P. 26(c)(1)(C). Plaintiffs argue that this request is "eminently reasonable and practical given the circumstances," considering that SM&P has apparently already compiled and organized the documents, and that Defendant has

> already propounded several discovery requests directly upon [Plaintiffs] in Utah, to which MonaVie can supplement its responses after reviewing the returned documents and culling them for irrelevant and privileged materials. If Amway is somehow dissatisfied with any supplement of documents in this manner, it can raise the issue directly with the Utah District Court where the action is pending and where the Judge is more familiar with the parties and issues.

*Reply* [#9] at 8 (citations omitted).

An analogous situation was addressed by Magistrate Judge Shaffer in *Lawrence E. Jaffe Pension Plan v. Household Int'l*, 2004 WL 1821968, at *4 (D. Colo. Aug. 13, 2004) (unpublished decision), where a third party was subpoenaed in the District of Colorado to

8

produce documents in relation to pending litigation in the Northern District of Illinois. The documents that were the subject of the subpoena had been previously produced in a separate arbitration and were subject to a protective order entered by the arbitrator. Noting that he saw "little to be gained by having multiple jurisdictions address issues of relevance and supervise document production under different [protective orders]," Magistrate Judge Shaffer ordered the plaintiff to obtain production of the desired documents through discovery requests to be served or already served in the Illinois litigation, where the court was better situated to address issues of relevance and privilege. *Lawrence E. Jaffe Pension Plan*, 2004 WL 1821968, at *4. Like Magistrate Judge Shaffer, this Court finds that Defendant should be required to obtain production of the desired documents produced in the Corkin litigation through discovery requests to be served in the Utah litigation, as that court has sole jurisdiction to modify the Protective Order and is better situated to address the potential relevance of the documents. However, to the extent that SM&P is in possession of documents that are responsive to the subpoenas and not covered by the Protective Order, the Court finds that such documents should be produced.

**III.    Conclusion**

Accordingly, as set forth above, IT IS HEREBY **ORDERED** that Plaintiffs' **Petition to Quash Non-Party Subpoenas** [Docket No. 1; Filed November 12, 2008] is **GRANTED IN PART AND DENIED IN PART**. To the extent the subpoenas seek documents that are protected from discovery under the Protective Order entered in the Corkin litigation, the Motion is **GRANTED**, and the subpoenas are quashed as to these documents. To the extent the subpoenas seek documents that are not covered by the Protective Order, the

Motion is **DENIED**.

IT IS FURTHER **ORDERED** that **Amway's Cross Motion to Compel Discovery From Starrs Mihm & Pulkrabek** [Docket No. 7; Filed December 2, 2008] is **GRANTED IN PART AND DENIED IN PART**. To the extent the subpoenas seek documents that are protected from discovery under the Protective Order entered in the Corkin litigation, the Motion to Compel is **DENIED**. To the extent the subpoenas seek documents that are not covered by the Protective Order, the Motion is **GRANTED**, and SM&P is directed to provide these documents to Defendant within **ten (10) days** of the date of this Order.

                                BY THE COURT:

                                __s/ Kristen L. Mix_____

                                United States Magistrate Judge

Dated: March 2, 2009